**DLA PIPER LLP (US)**
Cameron A. Fine (Bar No. 029331)
cameron.fine@us.dlapiper.com
Haley R. Augur (Bar No. 036310)
haley.augur@us.dlapiper.com
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016-4232
Tel: 480.606.5100
dlaphx@dlapiper.com

*Attorneys for Plaintiffs Novo Nordisk A/S*
*and Novo Nordisk Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Novo Nordisk A/S and Novo Nordisk Inc., ) | CASE NO. |
| ) | |
| Plaintiffs, ) | **COMPLAINT** |
| ) | |
| v. ) | |
| ) | |
| Red Mountain Weight Loss, LLC, ) | |
| ) | |
| Defendant. ) | |

Plaintiffs Novo Nordisk A/S ("NNAS") and Novo Nordisk Inc. ("NNI") (collectively, "Plaintiffs" or "Novo Nordisk") file their complaint against Red Mountain Weight Loss, LLC ("Defendant") for false advertising and unfair competition, and seek injunctive and other relief.  Plaintiffs allege as follows, on actual knowledge with respect to themselves and their own acts, and on information and belief as to all other matters.

### INTRODUCTION

1.    Novo Nordisk is a healthcare company with a 100-year history of innovation in developing medicines to treat serious chronic diseases like diabetes and obesity.

2.    The development of semaglutide is an example of Novo Nordisk's commitment to innovation for people living with chronic diseases.  Semaglutide is the foundational molecule that serves as the primary ingredient for Novo Nordisk's three prescription-only medicines approved by the Food and Drug Administration ("FDA"):  Ozempic® (semaglutide)

injection and Rybelsus® (semaglutide) tablets for adults with type 2 diabetes and Wegovy® (semaglutide) injection for chronic weight management.

3.     Novo Nordisk is the only company in the United States with FDA-approved medicines containing semaglutide.

4.     Novo Nordisk is also the only company authorized to identify its FDA-approved semaglutide medicines using the trademarks Ozempic®, Wegovy®, and Rybelsus®.

5.     The FDA has not approved any generic versions of semaglutide medicines.  To the contrary, the FDA has sent warning letters to companies that claimed that their Unapproved Products have the "same active ingredient as Ozempic, Rybelsus, and Wegovy," noting that Ozempic and Wegovy are currently the only "two injectable semaglutide products FDA-approved for the U.S. market."[1]

6.     This is an action brought pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, related state law, and the common law arising out of Defendant's acts of false advertising and unfair competition.

7.     Defendant markets and sells to patients compounded drug products that purport to contain semaglutide.

8.     Even though such compounded drug products have not been evaluated by the FDA for their safety, effectiveness, or quality, Defendant falsely and misleadingly represents to patients that its products are FDA-approved or the same as, or equivalent to, Novo Nordisk's FDA-approved semaglutide medicines.

9.     Defendant's conduct is likely to confuse and deceive patients into mistakenly believing that they are purchasing authentic Novo Nordisk medicines or medicines that have been evaluated by the FDA, studied in clinical trials, and deemed safe and effective.

---

[1] FDA – Warning Letter to Ozempen.com, MARCS-CMS 684435 — JUNE 24, 2024, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozempencom-684435-06242024#:~:text=WARNING%20LETTER&text=As%20discussed%20below%2C%20FDA%20has,new%20drugs%20and%20misbranded%20drugs.

**THE PARTIES**

10.    Plaintiff NNAS is a corporation organized and existing under the laws of the Kingdom of Denmark and has its principal place of business in Bagsværd, Denmark.

11.    Novo Nordisk developed the Ozempic®, Wegovy®, and Rybelsus® medicines.

12.    NNAS has granted to NNI exclusive rights to market, advertise, promote, offer for sale, and sell Ozempic®, Wegovy®, and Rybelsus® medicines in the United States.

13.    NNI is a corporation organized and existing under the laws of Delaware and has its principal place of business in Plainsboro, New Jersey.

14.    NNI promotes, offers, and sells Novo Nordisk's Ozempic®, Wegovy®, and Rybelsus® medicines throughout the United States, including in this District.

15.    Defendant Red Mountain Weight Loss, LLC is a limited liability company with a registered business address at 14000 North Hayden Road, Suite 180, Scottsdale, Arizona, 85260, in this judicial district.

16.    Defendant was formed and incorporated in Arizona, having Suzanne Bentz as the manager, and Red Mountain Med Holdings, LLC as the member, both with an address at 14000 North Hayden Road, Suite 180, Scottsdale, Arizona, 85260.  The registered agent for Defendant is WK&P Service, LLC whose registered address is 9141 East Hidden Spur Trail, Suite 101, Scottsdale, Arizona 85255, located in this judicial district.

17.    Defendant sells and promotes compounded drug products that purport to contain semaglutide, but that have not been approved by the FDA ("Unapproved Compounded Drugs").

18.    Defendant falsely claims or otherwise misleadingly suggests that its Unapproved Compounded Drugs are the same as or equivalent to the Ozempic®, Wegovy®, and Rybelsus® medicines.

**JURISDICTION AND VENUE**

19.    The Court has subject matter jurisdiction over the Lanham Act cause of action pleaded herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a).

20. The Court has supplemental jurisdiction over the common law cause of action pleaded herein pursuant to 28 U.S.C. § 1338(b).

21. Defendant is subject to personal jurisdiction in this District because Defendant is an Arizona limited liability company with a physical address located in Arizona.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant operates in this District, manufactures or sells its compounded drug products that purport to contain semaglutide in this District, and otherwise conducts business in this District.

## NOVO NORDISK'S FDA-APPROVED SEMAGLUTIDE MEDICINES AND OZEMPIC®, WEGOVY®, AND RYBELSUS® TRADEMARKS

23. Plaintiffs use the trademarks "Ozempic," "Wegovy," and "Rybelsus" to identify and promote the FDA-approved Ozempic®, Wegovy®, and Rybelsus® medicines. The Ozempic®, Wegovy®, and Rybelsus® medicines are sold and marketed in the United States by NNAS's indirect, wholly-owned subsidiary, NNI.

24. The Ozempic® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise. The Ozempic® medicine also lowers the risk of major cardiovascular events such as stroke, heart attack, or death in adults with type 2 diabetes and known heart disease.

25. The Wegovy® medicine is indicated to reduce excess body weight and maintain weight reduction long term in adults and children aged ≥ 12 years with obesity, and some adults with overweight and weight-related medical problems, along with a reduced calorie diet and increased physical activity.

26. The Wegovy® medicine is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of major adverse cardiovascular events such as "cardiovascular" death, heart attack, or stroke in adults with known heart disease and with either obesity or overweight.

27. The Rybelsus® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.

28.    The Ozempic®, Wegovy®, and Rybelsus® medicines have been extensively studied in clinical trials and are FDA-approved.

29.    Each of the Ozempic®, Wegovy®, and Rybelsus® medicines has a unique safety and efficacy profile which is set forth in its respective product label.

30.    The Ozempic®, Wegovy®, and Rybelsus® medicines are prescription-only medicines that should only be prescribed in direct consultation with, and under the supervision of, a licensed healthcare professional.

**DEFENDANT'S SALE OF UNAPPROVED COMPOUNDED DRUGS**

31.    Novo Nordisk does not sell its FDA-approved semaglutide medicines, Ozempic®, Wegovy®, and Rybelsus®, to Defendants for resale or redistribution.

32.    Defendant markets and sells to patients Unapproved Compounded Drugs that purport to contain semaglutide.

33.    The FDA has not approved Defendant's Unapproved Compounded Drugs.

34.    On information and belief, the Unapproved Compounded Drugs sold by Defendant are made by compounding pharmacies, which deliver them either directly to patients or to Defendant for administration or dispensing to patients.

35.    The FDA defines compounding as a "practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient."[2]

36.    According to the FDA, "[c]ompounded drugs are not FDA-approved.  This means that FDA does not review these drugs to evaluate their safety, effectiveness, or quality before they reach patients."[3]

---

[2] Human Drug Compounding, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.

[3] Compounding Laws and Policies, https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies.

-5-

37.    The FDA has further stated that compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs.  Unnecessary use of compounded drugs unnecessarily exposes patients to potentially serious health risks."[4]

38.    As the FDA has explained, "[c]ompounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.  Compounded drugs should only be used for patients whose medical needs cannot be met by an available FDA-approved drug."[5]

39.    The process used to produce most "semaglutide" used in compounding is fundamentally different from the process used to produce the semaglutide in Novo Nordisk's FDA-approved medicines.  Novo Nordisk manufactures the semaglutide in its medicines, pursuant to its FDA approval, in yeast cells under a closely controlled multistep process that uses recombinant DNA technology.  Most compounded "semaglutide," however, uses a "semaglutide" manufactured via chemical synthesis.  The chemical synthesis process, which is not used for the semaglutide in any FDA-approved semaglutide medicines, has resulted in new impurities, higher levels of known impurities, immunogenicity concerns, and potential stability issues in tested samples of compounded "semaglutide."[6]

40.    The FDA has received reports of adverse events, some requiring hospitalization, related to overdoses from dosing errors associated with compounded "semaglutide" products.[7]  In several instances, patients mistakenly administered five to 20 times more than the intended dose of compounded "semaglutide."

---

[4] Compounding and the FDA: Questions and Answers, https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.

[5] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery.

[6] Morten Hach *et al*, Impact of Manufacturing Process and Compounding on Properties and Quality of Follow-On GLP-1 Polypeptide Drugs, Pharm. Res., (Oct. 8, 2024), *available at* https://pubmed.ncbi.nlm.nih.gov/39379664/.

[7] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-

41.    The FDA has stated that the containers and packaging (including multidose vials and prefilled syringes) used by compounders, the varying product concentrations, and the instructions accompanying the compounded drug contribute to the potential medical errors.

42.    A publication from the Journal of the American Pharmacists Association also highlighted errors where patients accidentally self-administered doses of compounded "semaglutide" up to ten times greater than the intended amount.[8]

43.    FDA has issued guidance on its "Concerns with Unapproved GLP-1 Drugs Used for Weight Loss," which provides that:  (1) "compounded drugs are not FDA-approved"; (2) use of compounded drugs containing "semaglutide" "can be risky for patients, as unapproved versions do not undergo FDA's review for safety, effectiveness and quality"; and (3) "FDA has received reports of adverse events related to compounded versions of semaglutide . . . .   However, federal law does not require state-licensed pharmacies that are not outsourcing facilities to submit adverse events to FDA so it is likely that adverse events from compounded versions of these drugs are underreported."[9]

**DEFENDANT'S FALSE ADVERTISING IN CONNECTION WITH ITS SALE OF UNAPPROVED COMPOUNDED DRUGS**

44.    Despite the foregoing, Defendant has made false and misleading representations to patients regarding the nature of its Unapproved Compounded Drugs.

45.    Defendant promotes its Unapproved Compounded Drugs in connection with the operation and advertising of a health clinic, including through its website.

---

errors-associated-compounded.

[8] Joseph E. Lambson et al, *Administration Errors of Compounded Semaglutide Reported to a Poison Control Center—Case Series*, 63 J. Am. Pharmacists Assc'n 5 (2023), available at https://www.japha.org/article/S1544-3191(23)00231-5/abstract.

[9] FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss, https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

46.    Defendant has falsely advertised its Unapproved Compounded Drugs by making statements that describe the Ozempic®, Wegovy®, and Rybelsus® medicines but that are false or misleading when in reference to Defendant's Unapproved Compounded Drugs.

47.    Defendant has claimed or implied that its Unapproved Compounded Drugs have been approved by the FDA and have been reviewed by the FDA for safety, effectiveness, and quality.

48.    Specifically, Defendant claims or implies on its  Facebook and Instagram accounts  that its Unapproved Compounded Drug were "given FDA-approval."  Defendant similarly claims or implies on in its website that its Unapproved Compounded Drug is "medically approved" and obtained "medical approval in 2021."  *See* Exhibit A.



///
///
///
///
///

A. If you've heard of semaglutide and tirzepatide, these are types of GLP-1 medications that mimic a natural hormone in your body. They were first used to manage type 2 diabetes, then given FDA-approval because patients noticed significant weight loss results.

Have a question for us? Comment below 

**redmountainweightloss** 14w
#redmountainway
#redmountainweightloss
#weightloss #weightlossjourney
#weightlosstips #healthtips
#womenshealth #healthylifestyle
#healthyhabits
#weightlossmedications #ozempic 
#tirzepatide #semaglutide #glp1
#weqovy #zepound #mounjaro

  

26 likes

Semaglutide is a glucagon-like peptide 1 (GLP-1) receptor agonist that helps to regulate your appetite and how much you eat. It was originally developed as a type 2 diabetes medication. However, it was quickly discovered that patients experienced weight loss benefits, which led to its medical approval in 2021. Semaglutide mimics a natural hormone in your body called incretin, which is made primarily in your digestive tract. GLP-1 works to help people lose weight by:

So, what's the solution? Weight loss medications can be a valuable tool, especially when combined with healthy lifestyle changes. The groundbreaking research on semaglutide and weight loss highlights its potential as a game-changing treatment for individuals struggling with obesity. Semaglutide is a medically approved once-weekly medication leading the charge in weight loss results. It was first developed in 2012 and has quickly gained popularity.

49.     On the webpage for its Chandler, Arizona location, Defendant claims that its Unapproved Compounded Drug "was approved for chronic weight management in June 2021."

## What Is Semaglutide?

Semaglutide isn't your average weight loss medication. It's a type of GLP-1 drug initially developed to treat type 2 diabetes. The exciting news? Semaglutide was approved for chronic weight management in June 2021 because patients had reported remarkable weight loss results.

50.     These claims are false and misleading.  The FDA does not approve molecules in medications, such as semaglutide, but rather approves complete medications (like Wegovy®, Ozempic®, and Rybelsus®) after determining that the complete medications are safe and effective for their intended uses.  The FDA did not approve Defendant's Unapproved Compounded Drugs and did not conduct premarket review to evaluate Defendant's Unapproved Compounded Drugs for safety, effectiveness, or quality. Defendant therefore has no basis for claiming, directly or indirectly, that their Unapproved Compounded Drugs are "approved" by the FDA.

51.     Defendant has claimed or implied that its Unapproved Compounded Drugs contain the same semaglutide that the FDA evaluated in the context of reviewing and approving Novo Nordisk's new drug applications for the Wegovy®, Ozempic®, and Rybelsus® medicines, and are superior in effectiveness to Plaintiff's FDA-approved medicines.

52.     On both its Facebook and Instagram accounts, Defendant makes false and misleading claims including:  "Our semaglutide is a safe and effective alternative to Ozempic® at half the cost."; "While people who take semaglutide medications like Ozempic often regain the weight within a year of stopping, patients who continue to follow Red Mountain's healthy meal plans and lifestyle can keep the weight off."  *See* Exhibit B.



///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26





27    53.    Defendant's claims that "Our" Unapproved Compounded Drug "is a safe and

28    effective alternative to Ozempic®" and "differs from commercially available semaglutide

(like Wegovy® and Ozempic®), which involve a once-weekly injection and may cause common side effects" are false and misleading.

54.     The FDA has not reviewed the semaglutide allegedly in Defendant's Unapproved Compounded Drugs for safety, effectiveness, or quality, or otherwise as equivalent in safety, effectiveness, or quality to, Novo Nordisk's medicines.  Defendant has no basis to compare the semaglutide allegedly in its Unapproved Compounded Drugs to Novo Nordisk's FDA-approved medications containing semaglutide.

55.     Defendant's false representations mislead customers into believing, incorrectly, that the product with "semaglutide" offered by Defendant is an "alternative to", the same as or superior to, or just as safe and effective as, the Wegovy®, Ozempic®, and Rybelsus® medicines that have been reviewed and approved by the FDA for safety and effectiveness.

56.     Defendant has claimed or implied that its Unapproved Compounded Drugs have been subjected to clinical studies and trials, or have otherwise achieved the therapeutic outcomes achieved by the Wegovy®, Ozempic®, and Rybelsus® medicines.

57.     On its website and on webpages for individual locations, Defendant makes various representations including:  "FDA Clinical studies have shown patients taking semaglutide will lose an average of 15% of their starting weight after 16 months"; "Studies have shown that patients lost an average of 15% of their body weight after 16 months"; and "Clinical trials have consistently shown that semaglutide can lead to significant weight reduction, with adults experiencing an average weight loss of nearly 15% of their body weight."  *See* Exhibit C.



How much weight can I lose on semaglutide?

FDA clinical studies have shown patients taking semaglutide will lose an average of 15% of their starting weight after 16 months. Keep in mind individual results will vary based on factors like diet, exercise, age, gender, and other individual circumstances.

## Semaglutide FAQs

1. **Is Semaglutide Safe?** You may have heard the warning for patients about unaccredited pharmacies using research-only versions of semaglutide. We work exclusively with a PCAB-accredited pharmacy to ensure the highest quality of our medications for our patients.
2. **How Long Will It Take to See Results?** You should begin to see results within a few weeks of treatment. However, individual results may vary.
3. **How Much Weight Can I Lose with Semaglutide?** The amount of weight you lose will depend on several factors, like your age, gender, and other individual circumstances. Studies have shown that patients lost an average of 15% of their body weight after 16 months.
4. **Are There Any Side Effects?** Some people may experience side effects, such as nausea, diarrhea, abdominal pain, or constipation. These are usually mild and may improve within a few days. If your side effects are intolerable, we have a BPC-157 Peptide to help resolve any GI issues.

## The Benefits of Online Semaglutide Prescriptions from Red Mountain

- **Significant Weight Loss:** Clinical trials have consistently shown that semaglutide can lead to significant weight reduction, with adults experiencing an average weight loss of nearly 15% of their body weight.
- **Quick Results:** Many individuals begin to see weight loss within the first few weeks of treatment, with the full effects becoming more apparent with longer-term use.
- **Improved Health Markers:** In addition to weight loss, semaglutide has been shown to support improvements in several health markers, including blood pressure and cholesterol levels, which are often linked to excess weight.

When looking at GLP-1 vs semaglutide, semaglutide works by mimicking the glucagon-like peptide-1 (GLP-1) hormone, which plays a crucial role in regulating blood sugar levels. This boost in GLP-1 increases insulin production (which lowers blood sugar) and slows down digestion, allowing you to feel fuller for longer periods.

Studies show patients taking semaglutide alongside lifestyle shifts lose more body weight than those with similar lifestyles but not taking the medication. In large random control trials, patients taking semaglutide lost an average of 15% of their body weight, a 12% increase compared to those who didn't take the medication.

///

///

///

///

-14-

## Clinical Research and Evidence

Extensive clinical trials have demonstrated the efficacy of GLP-1 medications in weight management. For example, studies have shown that semaglutide can lead to an average weight loss of 10-15% of body weight in obese or overweight individuals when combined with lifestyle changes. These findings underscore the potential of GLP-1 medications as a transformative tool for those struggling with weight issues.

58.     On the webpage for its Swan, Arizona location, Defendant claims that "Recent studies have shown that they [Semaglutide and Tirzapetide] can help patients lose up to 15-22.5% of their body weight in 16 months when combined with healthy lifestyle changes, such as diet and exercise."



How do semaglutide and tirzepatide work?    ⌄

Semaglutide and tirzepatide have gained popularity as effective weight loss treatments. Recent studies have shown that they can help patients lose up to 15-22.5% of their body weight in 16 months when combined with healthy lifestyle changes, such as diet and exercise.

59.     These statements are false and misleading.  Novo Nordisk's FDA-approved medicines are the only drugs containing semaglutide to have been publicly studied for weight loss in clinical trials.  On information and belief, no such data exists for Defendant's Unapproved Compounded Drugs.

60.     On information and belief, Defendant has engaged in these unlawful practices to attract customers and generate revenues and profits.

61.     Defendant's false and misleading statements and practices are likely to have already caused mistake and deception in the marketplace.

62.     Defendant's false and misleading marketing is also likely to expose patients to unnecessary risks. Patients who mistakenly believe Defendant to be offering Novo Nordisk's FDA-approved medicines, or equivalent thereto, are unlikely to understand the

unique risks associated with, or the lack of clinical trials or testing establishing the safety and effectiveness of, Defendant's Unapproved Compounded Drugs.[10]

63.    On information and belief, unless enjoined by this Court, Defendant will continue to advertise its products, falsely, as equivalent to, superior to, or associated with the Ozempic®, Wegovy®, and Rybelsus® medicines—all in violation of Plaintiffs' rights.

64.    On information and belief, unless enjoined by this Court, Defendant's conduct will continue to cause mistake and deception.

**FIRST CAUSE OF ACTION**
**Defendant's False and Misleading Advertising and Promotion**
**in Violation of 15 U.S.C. § 1125(a)(1)(B)**

65.    Plaintiffs reallege and incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

66.    Defendant's practices, as described in this Complaint, constitute unfair competition and false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

67.    Defendant has violated the Lanham Act by using false or misleading descriptions of fact and false or misleading representations of fact in its commercial advertising or promotion that misrepresent the nature, characteristics, and qualities of Defendant's business practices and products, as set forth above.

68.    Defendant has also engaged in other false or misleading advertising and promotion intended to assure patients that Defendant's practices are lawful.  On information

---

[10] *See, e.g.*, Dozens Say They Lost Eyesight After Routine Surgery Using Compounded Pharmacy Drugs, WFAA, https://www.wfaa.com/article/news/do-not-publish-yet/287-5f002ed3-e110-4063-9959-a2e5f54b5097 (reporting mistaken belief of patient taking a compounded drug that "every pill you take, every shot you take is tested."); FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery ("Compounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.").

and belief, Defendant provides patients who purchase Defendant's Unapproved Compounded Drugs (or whom Defendant is trying to persuade to purchase its drugs) information that makes several false or misleading statements, including those described herein and in the exhibits hereto:

69.    The above-described acts of Defendant, if not enjoined by this Court, are likely to deceive members of the general public.

70.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs.

71.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

72.    By reason of Defendant's acts as alleged above, Plaintiffs have suffered and will continue to suffer injuries, including injury to Plaintiffs' business reputation.

73.    Because Plaintiffs' remedies at law are not adequate to compensate for all the injuries inflicted by Defendant.  Accordingly, Plaintiffs are entitled to entry of preliminary and permanent injunctive relief requiring Defendant to cease its false and misleading advertising and promotion and unfair competitive practices.

74.    Because the above-described acts of Defendant are willful, Plaintiffs are entitled to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

75.    This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION
### Unfair Competition (False Advertising) in Violation of the Common Law

76.    Plaintiffs reallege and incorporate each  allegation in the preceding paragraphs of this Complaint as though fully set forth here.

77.    Defendant has made false or misleading descriptions of fact and false or misleading representations of fact in its commercial advertising or promotion that

misrepresent the nature, characteristics, and/or qualities of Defendant's business practices and products, as set forth above.

78.    The above-described acts of Defendant constitute common law unfair competition.

79.    Defendant has made false or misleading descriptions of fact and false or misleading representations of fact in its commercial advertising or promotion that misrepresent the nature, characteristics, and qualities of Defendant's business practices and products, as set forth above.

80.    Defendant has also engaged in other false or misleading advertising and promotion intended to assure patients that Defendant's practices are lawful.  On information and belief, Defendant provides patients who purchase Defendant's Unapproved Compounded Drugs (or whom Defendant is trying to persuade to purchase its drugs) information that makes several false or misleading statements, including those described herein and in the exhibits hereto.

81.    The above-described acts of Defendant unfairly and wrongfully exploit Plaintiffs' goodwill and reputation.

82.    By reason of the above-described acts of Defendant, Plaintiffs have suffered damage to the goodwill associated with the Ozempic®, Wegovy® , and Rybelsus® trademarks.

83.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

84.    Because Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant, Plaintiffs are entitled to entry of preliminary and permanent injunctive relief, in addition to monetary relief in the form of disgorgement of Defendant's profits and corrective advertising costs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

1.   That the Court enter a judgment against Defendant that Defendant has:

    a.  Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a);

    b.  Engaged in unfair competition under the common law of Arizona.

2.   That each of the above acts was willful.

3.   That the Court preliminarily and permanently enjoin and restrain Defendant and their agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

    a.  using the Ozempic®, Wegovy® or Rybelsus® marks, including (i) use in any manner likely to cause confusion or mistake, to deceive, or otherwise infringe Novo Nordisk's rights in the Ozempic®, Wegovy® or Rybelsus® marks, or (ii) use in connection with the advertising, marketing, sale, or promotion of any Unapproved Compounded Drugs; and,

    b.  advertising, stating, or suggesting that any Unapproved Compounded Drugs, including any Unapproved Compounded Drugs that either are available, directly or indirectly, from or through Defendant or the use of which or access to which is facilitated by, or with the involvement of, Defendant:

       i.  are, or contain, genuine or authentic Novo Nordisk Ozempic®, Wegovy®, or Rybelsus® medicines;

      ii.  are sponsored by or associated with Novo Nordisk;

     iii.  are approved by the FDA; have been reviewed by the FDA for safety, effectiveness, or quality; or have been demonstrated to the FDA to be safe or effective for their intended use;

     iv.  achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes, including but not limited to by relying on or making reference to clinical trial results for Novo Nordisk's medicines;

v.   achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes similar or identical to Novo Nordisk's medicines or are interchangeable with or equivalent to genuine Novo Nordisk medicines;

vi.   are associated or connected in any way with Novo Nordisk or Novo Nordisk's medicines; or

vii.   contain any ingredient (including semaglutide) that is supplied by Novo Nordisk, is approved by the FDA, or is the same as any ingredient in any Novo Nordisk medicine.

c.   engaging in unfair competition with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines; and

d.   engaging in deceptive acts or practices with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines.

4.     That the Court require Defendant to disclose conspicuously and prominently in any public-facing materials for any Unapproved Compounded Drugs, including all advertising, marketing, and promotional materials, that: (a) the Unapproved Compounded Drugs are compounded drugs that have not been approved by the FDA; have not been reviewed by the FDA for safety, effectiveness, or quality; and have not been demonstrated to the FDA to be safe or effective for their intended use; (b) the processes by which the compounded drugs are manufactured have not been reviewed by the FDA; and (c) FDA-approved medicines containing semaglutide are available.

5.     That Plaintiffs be awarded monetary relief in the form of disgorgement of Defendant's profits for Defendant's false advertising and unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines and that this monetary relief be trebled due to Defendant's willfulness, in accordance with 15 U.S.C. § 1117 and any applicable state laws.

///

///

6.    That the Court award disgorgement to Plaintiffs of Defendant's profits resulting from Defendant's unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines.

7.    That Defendant be ordered to account for and disgorge to Plaintiffs all amounts by which Defendant has been unjustly enriched by reason of Defendant's unlawful actions with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines.

8.    That Plaintiffs be awarded punitive damages by reason of Defendant's willful unlawful actions with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines.

9.    For pre-judgment and post-judgment interest on all damages.

10.    That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable  provision of law.

11.    That the Court award Plaintiffs the costs of suit incurred herein.

12.    For such other or further relief as the Court may deem just and proper.

Dated: January 30, 2025             **DLA PIPER LLP (US)**

By: *s/  Haley R. Augur*
    Cameron A. Fine
    cameron.fine@us.dlapiper.com
    Haley R. Augur
    haley.augur@us.dlapiper.com
    2525 East Camelback Road, Suite 1000
    Phoenix, Arizona 85016-4232
    Tel: 480.606.5100
    Fax: 480.606.5101

    *Attorneys for Plaintiffs Novo Nordisk A/S and Novo Nordisk Inc.*